ASSIGNED TO COURT
ROOM NO. 3

IN THE COURT OF COMMON PLEAS
MAHONING COUNTY OHIO

CLERK OF COURTS
MAHONING COUNTY, OHIO

JUN 2 5 2008

FILED
ANTHONY VIVO, CLERK

| | |
|---|---|
| Ronald C. Nelson and<br>Elizabeth A Nelson<br>4905 E Rockwell Rd<br>Austintown Oh 44515<br><br>    Plaintiff<br>vs.<br><br>Trans Union LLC<br>C/O Statutory Agent<br>Prentice-Hall Corporation System<br>50 West Broad Street Ste 180<br>Columbus Oh 43215<br>&<br>Experian Information Solutions, Inc<br>C/O Statutory Agent<br>CT Corporation System<br>1300 East Ninth St<br>Cleveland Oh 44114<br><br>&<br>Asset Acceptance LLC<br>C/O Statutory Agent<br>CT Corporation System<br>1300 East Ninth St<br>Cleveland Oh 44114<br>&<br>AFNI, INC<br>C/O Statutory Agent<br>CT Corporation System<br>1300 East Ninth St<br>Cleveland Oh 44114 | CASE NO<br><br>08CV2624<br><br>JUDGE<br><br>COMPLAINT:CIVIL<br>OTHER<br><br>JURY DEMANDED<br>HEREON |

## JURISDICTION

1. Plaintiffs Ronald C. Nelson(Mr. Nelson) and Elizabeth A. Nelson (Mrs. Nelson) are currently residents of Richland County Ohio. However, the majority of the events that give rise to the Plaintiffs claims for relief occurred in Mahoning County. Mr. Nelson and Mrs. Nelson are consumers as defined by the Consumer



EXHIBIT B

Sales Practices Act Ohio Revised Code 1345.01(D), the Fair Debt Collection Practices Act, 15 U.S.C. 1692a(3) and Section 1681a(c) of the Fair Credit Reporting Act.

2. Defendant, Trans Union is a nonresident credit corporation doing business in the State of Ohio. Defendant Trans Union LLC's office and principal place of business is located at 555 West Adams, Chicago, Illinois 60661. Trans Union is a supplier within the meaning of Section 1345.01(C) of the CSPA. Trans Union is also a consumer reporting agency as defined by Section 1681(f) of the FCRA, in that Trans Union regularly engages in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in Section 1681a(d) of the FCRA.

3. Defendant, Experian Information Solutions, Inc. ("Experian"), is an Ohio corporation. Experian is a supplier within the meaning of Section 1345.01(C) of the CSPA. Experian is also a consumer reporting agency as defined by Section 1681(f) of the FCRA, in that Experian regularly engages in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in Section 1681a(d) of the FCRA.

4. Defendant Asset Acceptance LLC (Asset) is a foreign company doing business in the state of Ohio and is a debt collector as defined by 15 U.S.C. 1692a(6) Asset is also a supplier as defined by Ohio Revised Code 1345.01(C).

5. Defendant AFNI, Inc. is a foreign company doing business in the state of Ohio and is a debt collector as defined by 15 U.S.C. 1692a(6). In addition, AFNI is a supplier as defined by Ohio Revised Code 1345.01(C).

## VENUE

6. Venue in this judicial district is proper pursuant to Ohio Civ. R.. 3(B)(3) in that the Defendants conducted activity giving rise to Plaintiffs' claim(s) for relief in Mahoning County, and pursuant to Ohio Civ. R. 3(B)(6) in that at least part of Plaintiffs' claim for relief arose in Mahoning County.

## STATEMENT OF FACTS

### MRS. NELSON'S REPORTS AND AFNI AND ASSET ACCEPTANCE,LLC

7. Mrs. Nelson has battled with the credit bureaus to fix her information since 2002. Specifically, she has tried to remove an SBC-Ohio account that does not belong to her, which is currently reported as in collections with Asset Acceptance. Since 2002, she has called each credit bureau, Asset Acceptance, and SBC numerous times to remove this account. The address listed on the account is for the Cleveland area where she has never lived. When she called the credit bureaus she was told to call Asset Acceptance. When she called Asset Acceptance she was told to call SBC. When she called SBC she was told to call Asset Acceptance. Asset Acceptance finally told her we will send you a form to fill out. This form never arrived.

8. Approximately June of 2006, Mrs. Nelson knew that she would be relocating to the Columbus area and would need to get another mortgage. Mrs. Nelson took up the battle again. There were numerous accounts that either did not belong to her

3

or were showing an improper status. One in particular was a cingular account being reported as in collections with AFNI.

9. Approximately June of 2006, Mrs. Nelson spoke with an AFNI debt collector, she asked the collector which cell number was related to the account. The number given to Mrs. Nelson from the debt collector was not her number. Mrs. Nelson informed the debt collector of that fact and the collector responded that it didn't matter she would have to pay. Mrs. Nelson asked to see the contract she signed with cingular for that number. The collector refused to provide any information only that she would have to pay for the charge if she wanted it off her report. Mrs. Nelson then requested that the account be reported as disputed so that it would not affect her credit score. The collector again responded that she would not place a dispute on the report and that the only way it was going to come off her report was for Mrs. Nelson to pay it.

10. Completely frustrated, aggravated, and dejected, Mrs. Nelson sought counsel in approximately June of 2006. Mrs. Nelson had already contacted a mortgage broker in the Columbus area. The broker had indicated certain items on both Mr. and Mrs. Nelsons report that needed to be corrected otherwise the best interest rate he could get her was over 10 percent. Specifically, the loan officer identified the AFNI and Asset Acceptance accounts. In addition, Mr. Nelson's report contained addresses and names that were not his and derogatory accounts that he did not recognize indicating that it was likely his file was mixed with another Ronald Nelson.

11. Through counsel, the Nelson's sent very detailed disputes to each credit bureau. Included in the disputes were the Nelson's drivers licenses and signature samples, other supporting documents, and a complete table matrix showing which accounts were in dispute and why. The first paragraph of the dispute letter indicates that the Nelsons instructed the credit bureaus that they believed their files may be mixing with another consumer or consumers and for any account that stated "not mine" or "do not recognize" to have the creditor present an application or contract. With the application and contract the CDV operator could compare the signatures on those documents with the examples provided by the Nelsons and the drivers licenses and see that this was not their account.

## THE RESULTS OF THE REINVESTIGATION

### EXPERIAN

12. On of about August of 2006, Experian verified as reported the erroneous AFNI account as to Elizabeth Nelson. In addition, Experian left the Asset Acceptance account as to Elizabeth Nelson.[1] Moreover, Mr. Nelson's dispute clearly stated he believed his file was mixing with another consumer. Despite this notice, Experian reported <u>three different</u> social security numbers as belonging to Mr. Nelson. Finally, two other names with different middle initials were also being reported. This has caused Mr. Nelson severe stress. It is apparent that his credit file is still merged with at least three other people, despite the numerous disputes and having an attorney involved. In addition, Experian refused to update the state tax lien to show as paid.

### TRANS UNION

---

[1] AFNI for Cingular and Asset Acceptance for SBC-Ohio were not reporting on Mr. Nelson's report.

5

13. On or about August of 2006, AFNI and Asset Acceptance were both verified as accurate as to Elizabeth Nelson's Trans Union file.[2]

14. It was clear to Mr. and Mrs. Nelson that these two accounts were not going to be removed. The actions of each defendant in reporting the false information and then failing to do a proper reinvestigation caused Mr. and Mrs. Nelson to have to pay a higher interest rate in obtaining a mortgage for their joint residence. In addition, the frustration, mental anguish, humiliation and embarrassment resulting from the erroneous reporting and failed reinvestigations has been ongoing for years.

15. Asset Acceptance and AFNI knew that placing the accounts in Mrs. Nelson's credit file would do significant credit damage. In addition, these debt collectors also knew that attempts by Mrs. Nelson, as with many consumers, to have the credit bureaus remove the information is usually futile. The bureaus will only do a data conformity reinvestigation. This reinvestigation is not aimed to find out if a tradeline is accurate as it relates to the consumer disputing, but only that the credit bureau and the furnisher of the information are reporting the same information. Whether the furnisher is erroneously reporting an account on the wrong consumer is not relevant to the credit bureau as long as the credit bureau is accurately reporting what the furnisher is reporting. This conscious disregard for Mr. and Mrs. Nelson's rights ensured that these accounts would not be removed.

16. The Plaintiffs again authorized dispute letters to be sent by counsel in July of 2007. However, once again the accounts were verified.

---

[2] AFNI cingular and Asset Acceptance for SBC-Ohio were not reporting on Mr. Nelson's report.

6

17. In September of 2007, the Nelsons again tried to refinance their house in order to get relief from the high interest rate. Once again these accounts were reported to the new mortgage company causing unnecessary and unwarranted delay. The Nelsons were able to refinance, however, they paid a higher rate then they could have received if this information had been removed.

18. The Nelson's gave the Defendants every opportunity to correct their credit; however, to this day the credit reports are still not fixed. The Nelsons were left with no choice but to bring this action.

<u>**COUNT ONE**</u>
<u>**FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. 1692 et seq**</u>

19. Plaintiffs reassert each and every allegation as if fully rewritten herein.

20. The actions by Asset Acceptance LLC in negligently and/or recklessly verifying and reporting false information as a means to try to collect money not owed is a violation of the Fair Debt Collection Practices Act. The actions of AFNI in negligently and/or recklessly verifying and reporting false information violate the Fair Debt Collection Practices Act. The specific provisions of the FDCPA violated by Asset and AFNI include but are not limited to:

    a. 1692 d- any conduct the natural consequence of which is to harass, oppress, or abuse any person

    b. 1692e- any other false deceptive, or misleading representation or means in connection with the debt

    c. 1692e(2)-misrepresenting character, amount or legal status of the debt

    d. 1692f- any unfair or unconscionable means to collect or attempt to collect the alleged debt

7

  e. 1692f(1)- attempt to collect a debt not permitted by law

  f. 1692e(8)- falsely reporting information to the credit bureaus including not reporting that the debt is disputed.

21. The actions by Asset Acceptance and AFNI entitle the Plaintiffs to actual damages including damages for mental anguish, embarrassment, and emotional distress and reasonable attorneys fees and costs.

**COUNT TWO**
**CONSUMER SALES PRACTICES ACT**
**OHIO REVISED CODE 1345.01 ET SEQ**

22. Plaintiffs reassert each and every allegation as if fully rewritten herein.

23. The Plaintiffs are "consumers" within the meaning of R.C. 1345.01(D).

24. The Defendants are "suppliers" within the meaning of Ohio Revised Code Section 1345.01(C) in that they all engage in the business of effecting or soliciting the sale of goods and/or services to the Plaintiffs by collecting, gathering, disseminating and reporting credit information which is used primarily for personal, family, and household purposes.

25. Experian and Trans Union's services of collecting, gathering, disseminating and reporting of credit information about or for the Plaintiffs constitute a "consumer transaction" within the meaning of R.C. 1345.01(A). In addition, Asset Acceptance and AFNI's reporting of credit information and the attempts to collect a debt for personal, family, or household purposes also constitute a "consumer transaction" within the meaning of R.C. 1345.01(A).

26. R.C. 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or

deceptive act or practice by a supplier violates this section whether it occurs before, during or after the transaction."

27. R.C. 1345.03(A) provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during or after the transaction."

28. Experian and Trans Union's, representation that Mrs. Nelson's credit record includes two erroneous collection accounts and the furnishing of the reporting of those collection accounts by Asset Acceptance and AFNI are unfair, deceptive and unconscionable in violation of R.C. 1345.02 and R.C. 1345.03.

29. Trans Union's, Experian's, Asset Acceptance's and AFNI's refusal to acknowledge, address and remedy the Plaintiffs concerns and disputes as to the status of their credit record is unfair, deceptive and unconscionable in violation of R.C. 1345.02 and R.C. 1345.03.

30. Experian, Trans Union's, and violations of the FCRA, specifically Sections 1681e(b) and 1681i, and as to Asset and AFNI 1681s-2(b) constitute additional deceptive acts or practices in connection with a consumer transaction in violation of R.C. 1345.02.

31. As a direct and proximate result of all the Defendant's unfair, deceptive and unconscionable acts as alleged herein, the Plaintiffs have suffered harm, injury and loss in specific amounts to be proved at trial.

9

32. The Plaintiffs are entitled to relief pursuant to R.C. 1345.09 which provides a private remedy to consumers who have been injured by a supplier's violations of either R.C. 1345.02 or R.C. 1345.03.

## COUNT THREE
## FAIR CREDIT REPORTING ACT 15 U.S.C. 1681 ET SEQ

33. The Plaintiffs reassert each and every allegation as if fully rewritten herein.

### TRANS UNION AND EXPERIAN,

34. A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

35. Trans Union and Experian are consumer reporting agencies as defined by Section 1681a(f) of the FCRA.

36. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n* (a).

37. Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act.

### (Failure To Adopt And/Or Follow Reasonable Procedures)

38. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).

39. Trans Union and Experian had actual knowledge by numerous direct disputes from the Nelsons that the Asset and AFNI collection accounts were not accurate. Despite this notice, Trans Union and Experian published and disseminated this erroneous information to the Plaintiffs existing and prospective creditors causing actual damages, including a higher interest rate on their joint mortgage and humiliation, embarrassment and mental anguish.

40. Trans Union and Experian willfully and/or negligently failed to establish and/or follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to the Plaintiffs in violation of Section 1681e(b).

41. As a direct and proximate result of Experian and Trans Union willful and/or negligent refusal to adopt and/or follow reasonable procedures as mandated by the FCRA and as outlined above, the Plaintiffs have suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

42. Trans Union and Experian's continued refusal to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiffs. The injuries suffered by the Plaintiffs are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiffs to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## **(Failure To Conduct Reinvestigation)**

43. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

44. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

45. If any information is deleted from a consumer's file pursuant to this rule, "the information may not be reinserted in the file by the consumer reporting agency unless the person who furnished the information certifies that the information is complete and accurate." See, 15 U.S.C. § 1681*i*(a)(5)(B).

46. Experian and Trans Union were put on notice of the Plaintiffs disputes regarding the Asset and AFNI accounts and the fact that the state tax lien was paid. The accounts were erroneously verified as accurate and then reported to the Plaintiffs creditors. This caused the Plaintiffs to have to pay a higher interest rate for their joint mortgage and severe mental anguish.

47. Experian and Trans Union either conducted no investigation of the accounts or conducted such a shoddy investigation that the accounts remained despite the Plaintiffs' detailed disputes.

48. Experian and Trans Union willfully and/or negligently failed to conduct a reasonable investigation in violation of Section 1681i.

49. As a direct and proximate result of Experian and Trans Union's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA and as outlined above, the Plaintiffs have suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

### ASSET/AFNI

50. 15 U.S.C. §1681s-2(b) places a duty on the furnisher of information, after being put on notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation into the accuracy of the information. *See Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

51. Asset and AFNI's failure to conduct a proper reinvestigation after being on notice of a consumer dispute from each of the credit reporting agencies resulted in the verification of inaccurate tradelines on Mrs. Nelson's credit file that were subsequently republished to third parties.

52. As a direct and proximate result of Asset and AFNI's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA and as outlined above, the Plaintiffs have suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of

13

actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

WHEREFORE the Plaintiffs pray, as to all counts, for actual damages in excess of $25,000. As to Count Two actual damages times three. Punitive Damages reasonable attorneys fees and costs and any and all other relief this Honorable Court deems appropriate.

Date 6-23-08

Respectfully Submitted

Philip D. Zuzolo (0081865)
700 Youngstown Warren Rd
Niles Oh 44446
330-652-1609
330-652-9421(fax)
lawyers@zuzolo.com

## JURY DEMAND

Plaintiff request that this action be heard before a jury of at least 8 persons.

Respectfully submitted,

Philip D. Zuzolo